UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

CHRISTINA BRADDY,

              Debtor,
_____/

Case No. 10-66998
Chapter 7
Hon. Walter Shapero

FLOYD GILL, JR.,

              Plaintiff,

v.

CHRISTINA BRADDY,

              Defendant.
_____/

Adversary No. 10-07372

## OPINION DENYING PLAINTIFF'S NONDISCHARGEABILITY ACTION

### Introduction

A plaintiff acting *in pro per* commenced this proceeding against a defendant debtor who is his daughter. The proceeding is essentially an 11 U.S.C. § 523(a)(2)(A) nondischargibility case, though the plaintiff also noted in the accompanying cover sheet and his cursory complaint that he also invokes § 523(a)(4), as well as a request to have the subject real property deeded to him and/or return of certain monies he alleges that he gave the defendant pursuant to an agreement to purchase that property.

### Background

The husband of the debtor, Christina Braddy ("Defendant"), acquired real property located at 1315 Liebold in Detroit ("Property") sometime around 2004, and prior to their marriage in February 2005. As the Property was vacant around that time, he prevailed upon Defendant's sister

to move into the Property, so that it would be occupied and not be subject to vandalism and the like. Defendant and her husband, after their marriage, were living elsewhere. Defendant's father, Floyd Gill, Jr. ("Plaintiff"), and his wife (the mother of Defendant) apparently were having marital problems that culminated in the filing of a divorce action sometime toward the end of 2009. In 2006 or so, Defendant's husband, the apparent owner of the Property, was incarcerated and is still in prison. In early July 2008, Defendant's financial situation apparently was such that she and Plaintiff discussed the possibility of Plaintiff purchasing the Property.

Plaintiff alleges that those discussions, which he admits he initiated, culminated in an oral agreement for him to purchase the Property for some $15,000 or so. Plaintiff further alleges that, in pursuance of that agreement, he caused his wife to fill out a personal check drawn on Plaintiff's bank account, payable to Defendant for $9,000. Plaintiff then signed and gave to his wife, who thereafter gave it to Defendant. A $9,000 check payable to Defendant, endorsed by her, and dated July 28, 2008, is in evidence. Plaintiff testified that incident to the arrangement he then paid delinquent real estate taxes amounting to approximately $5,214 and also gave Defendant some $700 and other monies in cash, all of which was to constitute part of the consideration to be paid for the acquisition of the Property. Plaintiff alleges that Defendant in turn agreed to turn over to him a deed to the Property, and represented that she had power of attorney from her then incarcerated husband enabling her to execute such a deed. There is also Plaintiff's testimony that after delivery of that check, Defendant's sister, who was still occupying the Property, paid rent to Plaintiff in a monthly amount approximated $500 for some period of time.

Having not been able to obtain the deed, Plaintiff filed suit against Defendant in the 36th District Court of Wayne County on November 25, 2009 (Case No. 09-135-001). Plaintiff

2

alleged in that action that he paid Defendant some $15,200 for the Property, and that Defendant subsequently refused to sign the house over to him. That case never went to judgment, in part because of Defendant's bankruptcy filing on August 28, 2010.

Defendant and particularly her mother (Plaintiff's former spouse) tell quite a different story. They both acknowledge that there indeed was some discussion about selling the Property to Plaintiff, and that at some point late in 2008 Plaintiff tendered to Defendant some cash in an envelope as an initial payment for the Property. They say, however, that Defendant returned that cash to Plaintiff saying that Defendant's husband refused to sell the Property, and in the process thus making it clear that Defendant really did not have the power of attorney that Defendant said she had. Their explanation for the $9,000 check essentially is that it was not related to any agreement or discussion about the sale of the Property to Plaintiff. Rather they (primarily Defendant's mother) testified that (1) when Defendant's husband went to prison, he took some $19,000 from a 401(k) deferred compensation account or similar, and gave her mother the cash proceeds (then unbeknownst to Defendant) to be doled out by the mother to help meet Defendant's needs during the period when he was in prison; (2) she put the cash in a safe to which both she and Plaintiff had access; (3) that cash was not accessed, at least as far as she knew or by her, for a year or so, but roughly a year later, Plaintiff, who she says had a gambling problem, confessed to her that he had taken some $10,000 or so from the safe and lost it gambling; and (4) heated discussions ensued and the referred to $9,000 payment by Plaintiff was for the purpose of replenishment of the cash taken by him and gambled away, and was not related to purchase of the Property.

3

**Discussion**

What we have here initially is diametrically opposed testimony on key facts and accordingly the necessity of also looking at other evidence which does or does not reinforce or corroborate one side's version or the other's. All of this of course also arises in the context of a divorce proceeding between Defendant's mother and Plaintiff and resulting estrangements.

It is important to note that this case must be seen and decided in the context of being primarily a § 532(a)(2)(A) non-dischargeability action involving a claimed prepetition debt (the amounts Plaintiff alleges he paid Defendant for purchase of the Property). Section 523(a)(4) obviously does not apply as Plaintiff does not argue for or allege the existence of an express or technical trust or any facts which could be considered amounting to embezzlement or larceny. See Patel v. Shamrock Floorcovering Servs., (In re Patel), 565 F.3d 963, 968 (6th Cir. 2009). Further, this Court does not have the authority to require the Property to be deeded by Defendant to Plaintiff - both as a matter of lacking jurisdiction to do so, but more importantly because it is quite clear that Plaintiff did not obtain a binding agreement from Defendant's husband who owns the Property. Hence, Plaintiff can only be successful (and then only as to a sum of money) if he bears the burden of proof under § 523(a)(2)(A) that (1) he had a binding agreement from Defendant to sell him the Property; (2) she made representations incident to making that agreement; (3) at the time of the representations, Defendant knew such to be false; (4) Defendant made the representations with the intent and purpose of deceiving the Plaintff; (5) Plaintiff justifiably relied on the representations; and (6) Plaintiff sustained a loss as a result of the representations having been made. See Nehasil v. Grenier (In re Grenier), 430 B.R. 446, 452 (E.D. Mich. 2010) (citing Rembert v. AT&T Universal Card Servs., 141 F.3d 277, 280-81 (6th Cir. 1998) (citation and footnote omitted).


*Plaintiff, in pro per,* appears to be under the impression that he can attain in this proceeding some sort of judgment or order requiring Defendant to deed the Property to him in a way that will give him good title to it. That result, of course, is simply not legally available in this proceeding, if for no other reason than (1) the evidence is that the Property was acquired by Defendant's incarcerated husband prior to his marriage to Defendant; and (2) he is thus an owner (in addition to whatever interest in it that Defendant may have) and not a party to this proceeding, and therefore cannot be forced by this Court in this proceeding to convey the Property to Plaintiff. Some sort of order requiring Defendant to convey whatever interest she might have will not come close to giving Plaintiff what he argues he bargained for and is entitled to, i.e., title to and ownership of, the Property. And even if Defendant's husband was in fact actually a party to this case or was made such, there remains the serious question of whether this Court would even have jurisdiction to entertain what is essentially an equitable specific performance action in a bankruptcy case where a successful result has little or nothing to do with, or the necessary relation to, the purposes of the bankruptcy case itself. The absolute best that Plaintiff can attain here, therefore, is a ruling that Defendant owes a debt to Plaintiff arising out of the facts, and, that such debt is not discharged in the bankruptcy and thus notwithstanding the bankruptcy he will retain the ability to try and collect the amount of that debt from Defendant via whatever means available to him in the appropriate court.

As to the question of the existence of a debt for argument's sake (and giving full credence to Plaintiff's version of the facts), it is not enough that a contract may have been made by Defendant to convey good title to the Property to Plaintiff and that Defendant has failed to fulfill that agreement. If the ultimate disposition of this case turned on whether or not there was even an

5

enforceable "debt," it should be noted that there is a factual issue as to the amount of the agreed consideration (and thus whether there was ever a true meeting of the minds) and there is a Statute of Frauds (i.e., the legal necessity of an adequate writing in connection with the sale of real property) issue given the lack of any writing whatsoever evidencing the agreement (except the referred to check and other claimed payment performance acts), and whether or not such might constitute sufficient part performance to provide an exception to the legally mandated writing requirement. This latter would be a potential issue in light of cases such as Thorbahn v. Walker's Estate, 257 N.W. 892, 893 (Mich. 1934), where the court stated, "Part payment of the purchase price will not alone take the case out of the statute of frauds." Those issues need not be decided here, however, because the Court is disposing of the case on other grounds.

      Courts have said many times that a mere breach of contract claim does not in and of itself give rise to nondischargeability under § 523(a)(2)(A). See e.g., Cloyd v. GRP Records (In re Cloyd), 238 B.R. 328, 336 (Bankr. E.D. Mich. 1999) ("[A] mere breach of contract is not a dischargeable debt."). There must be more. In the context of the facts of this case, and as noted for purposes of analysis accepting Plaintiff's version of the events, that means that the Court must additionally find that (1) when Defendant made the agreement she never intended to fulfill it in the first place; (2) the key representation involved, i.e., that she had a power of attorney from her husband which enabled her to make the agreement and to convey title to the Property, was made with the intent to deceive Plaintiff or was a false pretense, and she knew at the time she neither had a power of attorney or could not obtain her husband's consent to convey the Property; and (3) it was thus all essentially a ruse to obtain the money that he paid her. See Smith v. Crowley (In re Crowley), No. 09-05292, slip op. at 6 (Bankr. E.D. Mich. 2010) (this Court) ("It is hornbook §

6

523(a)(2)(A) bankruptcy law that the alleged violative conduct must have taken place or exist at the inception of the debt[.]") (citation omitted); Skyles v. Stinson (In re Stinson), 364 B.R. 269, 276 (Bankr. W.D.K.Y. 2007). See generally Rembert, 141 F.3d at 280-81 (identifying elements of a § 523(a)(2)(A) action).

Plaintiff has the burden of proving all elements of his case by a preponderance of the evidence. See Grogan v. Garner, 498 U.S. 279, 291 (1991). It is the Court's considered conclusion Plaintiff has failed to do so. In coming to that conclusion, the Court has given Plaintiff the benefit of the doubt as to the many crucial facts in dispute, and finds Plaintiff's case wanting. Conceding for purposes of the analysis that Defendant said she had a power of attorney or its equivalent is not, as noted, sufficient in and of itself to make Plaintiff's case. While Defendant did not in fact have such, the ultimate question here was her intent in making that statement and whether or not it amounted to fraud. Maybe Defendant felt, given that her husband was in prison, he would consent to the sale as a way of obtaining funds for her to live on, or that their relationship was such that such consent was forthcoming. Having seen and heard all of the witnesses and having reviewed the evidence, the Court has concluded that the required intent to deceive or action amounting to the kind of fraud required for Plaintiff to prevail has not been sufficiently proven by Plaintiff who therefore has not carried his burden of proof.

## **Conclusion**

For the forgoing reasoning, the Court finds in favor of Defendant. An order is being contemporaneously entered to that effect.

**Signed on May 18, 2012**

                  /s/ Walter Shapero
               **Walter Shapero**

United States Bankruptcy Judge